Madam Clerk, please call the class officers to the morning. Class of 2014, Class of 2021, Jackson Park Hospital v. Captain's Deputy. Good afternoon, Justices. May it please the Court, Counsel. My name is Matt Daly. I represent the appellant, Jackson Park Hospital. I'm here today seeking a reversal of a remand order which reversed the arbitration and commission award of a loss of trade of 40% of the man as a whole. Remand order ordered the commission to enter a wage differential. I'll try to stay light on the facts of the case, being we're the last one on the day. Long story short, the petitioner at the outset was a stationary engineer at the hospital, injured her neck, back, and knee. Ultimately, the knee is the main issue here. She returns back to work after a surgery. The hospital found a position for her. She ultimately wound up in the security department working in the parking lot. The important note here is that the entire time she worked in this position from 2007 through the date of trial, she was paid at the same rate that she was paid at prior to the injury. She's a union employee. Her wage has never deviated. So when we went to trial, the arbitrator concluded that he was unable to prove a wage differential, mainly because of the second prong of the requirement of a wage differential, that there was an impairment of earnings because there was no impairment of earnings because she was earning the same wages for over four years. Is that wage at the time of the arbitration hearing the amount being earned as dispositive? Well, it's dispositive of whether or not there was any sort of impairment. So she began earning this wage. The wage never deviated pre-injury. It was the same wage. She got this job, a different job from the stationary engineer in 2007, worked that same job all the way through and past the date of arbitration hearing. What was the date of arbitration? The dark date of arbitration, not the 19th, but the other one was in April of 2011. And how soon after the arbitration hearing did you tell her that she had a job? I believe they let her go almost a year afterwards. I think it was the decision came down in June, I think, I want to say it was April of 2012. It was shortly in April of 2012, so almost another year post the arbitration hearing that they had to let her go. This is the hospital. Well, it's about three months after the commission. Well, what happened, Your Honor, was that the matter was set for oral arguments on both of our reviews. I initially wrote for a percentage of the leg. Counsel was still looking for the wage differential. The oral arguments were set. Counsel argued that he didn't get notice. Those were continued. So at that time, the oral arguments were initially set. She was still employed by the hospital at that point. It was actually before the commission's decision. Right. On the second rescheduling of the oral arguments. Let's get back to the issue. I mean, it's an issue, isn't it, of whether there's an impairment in earning capacity, not how much are you making today? And it's in some suitable point, according to the statute, right? Well, according to the statute, it will indicate whether there's a partial incapacity to make earnings, and I take that as going to the future, and an impairment of earnings. There's no impairment of earnings at the time of the trial. Well, I mean, if the wage at the time of the trial is dispositive, let's turn this around, and let's say at the time of the trial she's working part-time, making minimum wage. And you as the employer, you can go in and present evidence and say that's not a true representation of her earning capacity. And you can put on evidence and have an expert come in and say she can make $12 an hour, she can work full-time, et cetera. You know? Right? Correct. I mean, you wouldn't want to be prevented from doing that. No. And in this case, the arbitrator in the commission treated the amount she was making at the time of the hearing, even though she was performing a job that, by all accounts, she wasn't qualified for, couldn't get anyplace else, they treated the wage the employer was paying, depending on that, as dispositive. Right? Correct. Is there any factor in any other evidence? No, but I'd like to address the fact that she wasn't qualified for this job. This is an employee who was initially returned to work full duty that had additional complaints of the knee, and then she went off due to that knee surgery. When they got her back in this position, she was in a parking lot in a tower watching cars. She was ordered not to get involved in any altercation. Things happen. Call other security. Call the Chicago Police Department. Whatever. So whether or not she's technically qualified, she's qualified to do that job. And, in fact, it's probably ten times less the responsibilities that she had as a stationary engineer that she was qualified to do. So she couldn't be a stationary engineer anymore. Well, that's right. That's the part of the loss of trade that the arbitrator in the commission awarded, and because there was no impairment of earnings. And that goes back to when the circuit court reversed it. It wasn't exactly clear, but he indicated that the awards were against the manifest way of the evidence, and the only thing I think he could take from that is that he determined the security job to be a sham job. Was there any evidence presented at all, any evidence, that she could earn $23.61 an hour anyplace else in the world besides this job? No evidence, no, presented on that. Because at the time of the trial, I believe that was a moot point because there's no impairment of earnings. We had an IME at the time of the point that she could return full duty. And they had an FCE back three years prior for the IME indicating that she was at a sedentary level. But the arbitrator took that to be the end all be all with her limitations. The FCE specifically stated we're conditioning to get her back to her old job. So she had the IME three years later with Dr. Carlson. Dr. Carlson opined that, yes, she can return to her job full duty. This woman had a year-and-a-half, a year gap between 2007 and 2011 of treating for that knee. And the only thing she was treating for leading up to the time of the trial was quad insufficiency. And that's it. And the arbitrator found that he didn't lend weight to the IME because he said the IME doctor didn't take into account the FCE, which was erroneous. And when we reviewed that, we put all that in there. But the commission still affirmed it. And my client decided not to appeal that to the circuit court because it was an old case and they wanted to move on from it. Counsel? First arbitration. First arbitration, yes. And then the only basis then for the circuit court judge to reverse it and remand it then would be that the security job was a sham job. Is it a bona fide representation of her earning capacity? Well, it is her earning capacity because she'd had that earning capacity for four years. Wait a minute. Hold on. Slow down a second. Let's look at the language of the statute. Sure. She would be entitled to, if there's a wage differential, of 66 and two-thirds of the difference between the average amount, which she'd be able to earn in the full performance of her duties and the occupation in which she was engaged at the time of her accident. We know what that is. The other half is and the average amount which she is earning then or, which means it's in the disjunctive, is able to earn in some suitable employment or business. Now, does the in some suitable employment or business modify only that which she is able to earn or does it also modify that which she is earning? I think it's that which she is earning because one of the key points in this case and what's different from the typical case law. Well, if it modifies that she is earning, then they got it right. Well, no, because she's working this job for four years. She's earning a wage for four straight years. It's not a suitable job for her. There's all sorts of reasons why it wasn't suitable. She didn't have a gun on her card. She hadn't done this and she hadn't done that. They gave her the full amount and nobody in that occupation that she was being paid for was getting paid at her rate. She was being paid at a stationary engineer's rate for doing security work. I understand that, Judge. So if some suitable employment or business modifies that which she is earning, then you lose. Well, I think the case law, Judge, is pretty specific that it's a two-pronged approach, meaning one, that there's a parcel of capacity that prevents her from pursuing it. No, no, we understand what a two-pronged approach is. But it's an impairment of earnings. Yes, we understand that. But the question is, if you make her a job and just pay her what she's getting in her old job up to the day of arbitration, they're shams. And then the day after arbitration, you fire them, they go down, and you don't have to pay a wage differential. Instead, you can pay a percentage of man as a whole, which, under Gallianetti, we say is not the choice, is a chosen way. Isn't that what happened in Smith's case? Well, in Smith's case, it's different. In Smith's case, this woman took a job. They reduced her wages, I believe, to $8 or $9 an hour from $15. And it was clear to the commission, the arbitrator, at the time of the trial, they raised these back up to $15 an hour in a clear attempt to avoid a wage differential. Well, so you can look at Smith and say, ah-ha, we won't do that. We're going to leave her in this position, pay her the same wage in this position. In light of the fact, I think in this case, don't you have the unadulterated opinions of the certified vocational rehab counselor who is saying here that she's at a severe disadvantage? At best, her earning capacity was between $8 and $9 per hour. Isn't that in the record? That's in the record, yes. So why is she making $23 an hour? I'll tell you exactly why. Because she was a union employee. They found a job for her. At the time, you know, from 2007 up until the trial, they didn't even pass the trial. We had an IME report, which it was a solid IME report, and she has no radiological findings other than quad insufficiency for multiple years leading up to that, that she would go back to full duty following the initial trial. It didn't work out that way. You know, I can't predict that. The arbitrator can't predict that. So keeping her in that job, helping her to get back to full duty is what every employer should be doing. And she should be happy that they got her back and continued to pay those wages the entire time. Now, this case is completely different from any case that was cited regarding a bona fide offer or a sham job in which it was specifically the employers were reducing wages in short periods of time and artificially inflating them again. Well, that's the other side of the coin, though. But here's the argument that I think you're vulnerable to. Isn't there evidence in the record that other safety officers, and just so I understand this, she's paid $23.61 an hour as a safety officer, correct? Correct. Part two of that, she was making that in the other position, correct? Correct. Safety officers typically, according to the record, earn between $8 and $11 an hour, including your company's other safety officers. So why is she making $12, $13 more? It's a sheer coincidence? No, it's not a sheer coincidence. Like I said, she was a union employee. They kept her in her same range, her collective bargain agreement with the same wages during the pending litigation of this claim, trying to get her back full duty, which they thought they'd get her back. And what would prevent you then from firing her the next day after arbitration? I mean, you could say that about anybody, Judge. It seems like in your reply brief, you attempt to distinguish the facts here from Smith, just based on the period of time that she was being paid this increased wage. Can you say four years had passed? It's certainly a factor, yes. So that would, in your opinion, be indicative of this being genuine and not a sham. That had been a year. Now you're in a more difficult position? Is that your position? Well, no. Then you've got to go to the logistics on the board. Say, for instance, we go through the arbitration. He gets a wage differential, and she's still there earning the same $23 an hour she gets. Then you get the wage differential. Well, how do you even pay it when she's still employed there? Do you just say, keep working until we fire you? Then this wage differential is going to kick in? I mean, that's what she was making at the time of the trial. It was a bona fide job. They kept her there for four years. She was qualified for it. The only person saying she's not qualified for it is a vocational expert, which certainly typically security charge have certain qualifications. They found a job for her, got her back to work full duty, and paid her her same wages. This is a woman who has a torn meniscus and has received a loss of trade award, let alone now a wage differential. So, you know, I just don't believe that the facts are there for a wage differential. Counsel, your argument would make more sense if you interpreted the statute and the disjunctive merely to say that you have one of two choices. You compare it with how much she is actually earning, and if she's not earning anything, then you compare it with that which she is able to earn in some suitable employment. The some suitable employment is not a modifier of that which she is earning. And that was a big softball I just flipped you. Well, no, I mean, I believe that's etiquette. I haven't compared it. No, I haven't compared it with softball, Your Honor. Then we never even get to the second aspect of that because there's no impairment of earning. And it indicates that... It's an impairment of earning capacity. Right. Okay? I understand that. What she's making on the day of the hearing isn't the question. The question is what is her, now after this accident and this injury, what is her earning capacity? And in this case, all the evidence is but for the employer paying, continuing to pay her $23.61 an hour, there's no place else she can go. Is that her earning capacity? Was it really $23.61 an hour when nobody else is making more than $9 an hour in the Chicago area for this job? Absolutely. How can we make that earn? They paid her for over four years. Yeah? So that's her earning capacity. I don't know what you... If it were differential, it would have been a lot different. I understand, but I don't know how long you have to work a job to determine an earning capacity for an employee. I mean, it clearly wasn't a sham job where they're decreasing it, increasing it, never offering her a job. I understand that, but you're bootstrapping. You're saying what she was actually making at the time is determinative. When the statute, the law, talks about earning capacity, not what she's making. As Justice Stewart says, capacity is determined by comparing another variety of factors. You would make it very easy. She's making $23.61. There can't be a waste impairment finding here because she's making the same amount. What would be the purpose of the language, earning capacity, then? Your answer should be earning capacity is not contained within the statute. I understand. That should be your answer. That is the answer. It's in the briefs. It's in what I just stated. It's there, and that's the argument. The same thing the arbitrators concluded, the same thing the commissioners concluded, that there's no impairment of earning capacity. You can't have a wage differential, and it goes to the same motion which counsel addressed in his brief about reopening proofs after the fact. If you reopen proofs and allow them a second chance at a wage differential, again, it's not logistically or procedurally possible to get a wage differential if somebody's making the same wages and then says they're just going to kick in somewhere down the line if she's terminated or reassigned to a different position. It's not the law. And based on that, that's why we ask that, again, you reverse the circuit court decision and reinstate the initial arbitration and commission decisions. And, again, I will wait for your reply. Thank you, Your Honor. Thank you. Counsel may respond. Good morning, Your Honor. Pete Bobber on behalf of Kathy Jenkins. Counsel? Justice Hoffman, since that 16-inch clincher is still hanging in the air, I will feel free to grab my bat and try to whack it out. Can I ask you a question that goes along with that? Sure. Let me give you a hypothetical. You get the exact same facts of this case, although the woman wasn't let go and she continues working for the hospital at $23 an hour. Your theory would be she gets to keep the $23 an hour, plus she gets a wage differential for the difference between $23 an hour and $9 an hour, isn't it? Is that your argument? Absolutely. Does that make sense to you? Yes, it does. Why? Here's why, Your Honor. Because the way this Workers' Compensation Act works is petitioners are afforded one opportunity to prove their permanency, to prove their disability. The evidence in this record at the time of the arbitration proved that Ms. Jenkins' earning capacity was reduced on a permanent basis. First of all, as to the first problem, which I'm going to handle for one minute, counsel keeps on talking about petitioners' incapacity. That's not an issue before this court. The commission decided she was unable to return to her prior employment as a station engineer, responded, and the employer never appealed that issue. That's gone. We're only looking at the impairment of earnings. Petitioners and claimants only have one opportunity to present that evidence. The case law is replete with mentions that the court prefers wage differentials. Counsel would like us to infer the motive of employers and say, well, Jackson Park Hospital did it for four years. I don't want to hear about motives. I want to hear about the interpretation of a statute that says, and I'm going to quote it again, and the average amount which he is earning or is able to earn in some suitable employment or business. What leads you to believe that some suitable employment or business modifies that which he is earning, as opposed to modifying only that which he is able to earn because they are stated in the disjunctive or. Now, we know there's an or because at the time of this arbitration, your client was earning income. So we don't need to talk about that which she is able to earn. We know what she is earning. And unless there's some suitable employment also modifies what she is earning, then she's not entitled to a wage differential. With all due respect, Your Honor, my position is that the actually earning portion of the statute is not applicable under these facts because those earnings were not legitimate. If there was a finding of that by the Commission, Counsel, I'd be 100 percent with you. Did they make such a finding? There was to the extent that on remand, when the Commission was hesitantly awarding the wage differential, look at how they awarded the wage differential. The Commission could have stood up and said, Petitioner's earning capacity is $2361 an hour, based upon the credible evidence in the record that we weighed, and therefore calculation of the wage differential is a zero wage differential. Once it was remanded back to them, telling them they had to award a wage differential, they had to come up with a wage differential different than $2350, or there would be no wage differential. Exactly. It doesn't make any sense. They weren't at liberty to go back and say no wage differential. They could have. They were ordered to give a wage differential. They were ordered to find facts, and the fact they could have found was that Petitioner's earning capacity was $2361 per hour. Right. Instead what they did is they adopted the vocational expert's opinion that Petitioner's earning capacity was in fact $9 an hour. They found that that was the evidence in the record. Interestingly, too, the Commission could have awarded that wage differential either based on the date of determination or on the basis of the date of the second arbitration hearing. Instead, what did the Commission do on remand? They ordered it back to the date that she originally was released to return to work in February of 2007. So I think the Commission's findings of fact on remand are illustrative of their adopting the vocational expert's opinion and finding that that is the proof in the record of this Petitioner's earning capacity. And because Petitioners only have one opportunity to present their case, then we are going to put it entirely in the control of employers to decide how this is going to work. And once again, I... Counselor, that's not what Judge Sherlock's order read, what you told us. I'll read it to you. This case is remanded to the Commission for entry of an order for an award pursuant to 8D1 rather than 8D2. They were ordered to give her a wage differential. They weren't given the opportunity to decide whether she was entitled to one. They were ordered to give her the award. I agree, Your Honor, but they weren't ordered as to what the rate was. They were to make findings of fact in that regard. And they weren't ordered as to when the wage differential would commence. They were allowed to look at the facts in the record. And what did they do? On remand, the Commission finds that they award two-thirds of the difference between the $23.61 stationary engineer job and the $9 per hour she would be able to earn in some suitable alternative employment. Well, there's no question that they did that solely in the direction of the circuit court. I mean, I don't remember the exact language, but the Commission said something like, we see no reason to disturb our prior decisions. I mean, there's no question that they did what they did because they were ordered to. You know, so stick with the original decision is wrong. Well, it was just for the reason that I already stated, that petitioner only gets one bite of the apple, essentially, here, Your Honors. And if we look at the Mary Ann Smith case, it was arguably then fortuitous, when Your Honor got the record there and reached the Smith decision, that they artificially increased her wages for doing a $9 an hour job. Here, from day one, you know, counsel even in his reply brief, indicates that the job that Kathy Jenkins was doing was hardly even a security job. But the evidence supports she can't go out and do that job anywhere else. And whether they stop supplying the job because of the point of litigation, or the hospital closes its doors, or for whatever reason, the fact is this petitioner's earned capacity is altered. Well, you know, counsel, it's not like if she doesn't get a wage differential, she's going to go out the door with nothing. She's going to get an AP1 award. AP2. AP2 award. She's not going out with nothing. Yes, but Your Honor, this court has on multiple occasions expressed its preference for wage differential. There's no question we say, we know what it says. There's a preference for wage differential. But it's only when the wage differential is warranted. And by the way, the commission did say, and Justice Stewart is correct, the commission finds no evidence in the record that warrants altering its decision. However, pursuant to the circuit court's order, we modify its permanent partial disability award and grant a wage differential award. They never brought the argument that she was entitled to a wage differential in either decision. They did it because they were ordered to do it. So the question is, does the sum suitable employment modify that which she could earn in some suitable business, or does it also modify that which she is earning? And on what basis do you say it modifies that which she is earning? Your Honor, I'm unable to differentiate that to your satisfaction. My argument is that. Your argument is sort of an argument of public policy. Well, exactly. And my argument goes to the fact that what she's actually earning is a fiction. It was a legal fiction. She was not qualified to do this job. She was not being paid like any other worker. This job is not available anywhere else in the economy. Counsel, if the commission found that, I'm with you 100%. If they would have said, this is a fraud. The only reason they're giving her this money is so they don't have to pay her a wage differential. In that particular case, we're giving her a wage differential because they've engaged in a sham. No problem. They didn't do that. They didn't make that finding. Well, I would argue that the commission's decision is violent about the law, then, because the evidence that they relied on in the record, they never claimed the petitioner was not credible. They never claimed that Mr. Rascai, the certified vocational counselor's opinions were not credible and believable. And they never made a finding. They never made a finding that she was capable of earning the $23.61 per hour or that that was suitable employment or provided any vocational expert testimony or report indicating that this woman was, in fact, capable now, post-injury, of earning that amount. So, with that, Your Honor, I thank you for your time. Thank you, counsel. I'd just like to address a couple things. One is the bite at the apple argument. I get the bite at the apple argument, but I don't know when that bite would cease based on these facts. This woman was employed for seven years in total through the litigation of this, including almost an entire year after the arbitration. Additionally, I have my notes there that the act instructs the commission to look at the amount the claimant is earning or is able to earn in some suitable employment. I don't think you even get to the or part because of what she is earning. Based on that, and if you agree that the proof should have never been reopened, there cannot be a wage differential in this case based on law or logic. Just let me clear you a little bit from the issue here. Did the commission abuse its discretion by not allowing the claimant to reapprove after she lost her job? No. And I'll tell you why. Because, one, for two reasons. One, was this motion came in after the oral arguments were even set the first time. Not that it was any fault of Mr. Bobber's, but he wasn't there for it. This would have already been through oral arguments at that point. And this is over a year later as well at the point that he wants to reopen the proofs again. I mean, it's a very slippery slope to allow petitioners to do that and come back and say, well, we didn't get it this time, we want to come back and try again now. Well, if the amount the claimant is earning at the time of the arbitration hearing is dispositive and any employer can just keep paying the claimant the previous wage to sit in a chair and do nothing or whatever, then the employer can always defeat the wage differential and then fire the claimant the next day. I would respectfully disagree with that, Your Honor. And the basis for that is they didn't attempt to defeat a wage differential hearing. You have these other cases in which the employers were hit with wage differentials. The facts of this case are not those cases like Merriam-Smith, Yellow Freight, Reliance, Leonard. In Smith, the court ultimately, their determination was that the amount she was being paid was not indicative of her true earning capacity. That's the issue. I mean, it so happened that there was actual proof in that case that there was a sham that the insurance company said, pay her more so we won't have to pay a wage differential. Do you think that's ever going to happen again after the Smith case? I think it will. Let's say we decide in this case as long as the employer keeps paying, there's no wage differential ever. Do you think any employer is ever going to be testimony that, oh, we only did it so she wouldn't get a wage differential? Well, I don't think there was that testimony in that case either. The question of Smith was, did it indicate her actual earning capacity? Well, it was also that it was clear that the job that they got Smith back to was a sham based on the clear reduction down from 8 hours back up to 15 at the time of trial and within a year with no basis for that increase. In this case, that's not the case. You have four years, over four years of employment with no issues with this employee in terms of physical reprimands, grievances, any of that. Four years of these wages and through the date of arbitration and almost a year afterwards and through what would have been the oral arguments as well. I mean, it's got to be stopped at some point. This woman received over $100,000 for a torn meniscus. And if there's no other questions, I again just ask that you reverse the circuit court decision as the initial arbitration and commission or decision were not against the manifest way of evidence and reinstate those decisions. Thank you, Your Honor. Counsel. Thank you.